**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

LEANDRO MEDINA SERAQUIVE,

Petitioner, 9:26-cv-1522 (ECC)

v.

TODD LYONS, in his official capacity as Acting Director of the Immigration and Customs Enforcement; MARKWAYNE MULLIN, in his official capacity, Secretary of the U.S. Department of Homeland Security; TODD BLANCHE, in his official capacity, Acting Attorney General of the United States; and PHILIP RHONEY, in his capacity as Acting Field Office Director, Buffalo Field Office, Immigration and Customs Enforcement;

Respondents.

---

Kathy Manley, Esq., *for Petitioner*
Alexis M. Osborne, Assistant United States Attorney, *for Respondents*

**Hon. Elizabeth C. Coombe, United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

On August 10, 2026, Petitioner Leandro Medina Seraquive (Seraquive), a citizen of Ecuador, who had been present in the United States since February 24, 2024, was taken into custody by Immigration and Customs Enforcement (ICE). Petition (Pet.) ¶ 1, Dkt. No. 1; Dkt. No. 9 at 1. On the same day, while he was detained at the Albany Hold Room of ICE Enforcement and Removal Operations in Malta, New York, Dkt. No. 5, Petitioner filed a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2241, *see* Pet.

The Court issued an Order setting a briefing schedule and prohibiting Respondents from moving Petitioner outside the Northern District of New York while the Petition was pending. Dkt. No. 2. Later that day, Petitioner filed an amended petition, Amended Petition (Am. Pet.), Dkt. No.

3, and the Court issued another scheduling order, Dkt. No. 6. After carefully considering written arguments from both parties, the Court modified its prior order prohibiting Petitioner's transfer outside of the Northern District of New York to permit transfer to the Western District of New York. Dkt. No. 8.

Petitioner seeks immediate release, or in the alternative, a bond hearing, and attorney's fees and costs under the Equal Access to Justice Act, as amended, 28 U.S.C. § 2412. *Id.* at 15-16. After carefully considering briefing from both parties, Dkt. Nos. 9, 10, the Court grants the amended petition and orders Petitioner's immediate release.

## I. BACKGROUND

Petitioner, a citizen of Ecuador, entered the United States near the southern border on February 24, 2024,[1] was issued a notice to appear, and was released on an order of release on recognizance. Response (Resp.), Dkt. No. 9 at 1. At the time, ICE concluded that "[t]he subject does not appear to be a threat to national security, border security, or public safety" and that Petitioner had no prior criminal history. Dkt. No. 9-1 at 2, 3.

On March 3, 2025, Petitioner filed an application for asylum. Am. Pet. ¶ 16; Traverse, Dkt. No. 10 at 1. On June 16, 2025, he filed an application for special immigrant juvenile status. Am. Pet. ¶ 16; Traverse at 1.

On August 10, 2026, Petitioner was taken into custody by ICE after ICE stopped a vehicle associated with a noncitizen who was subject to a final order of removal; Petitioner was a passenger in that vehicle. Resp. at 2. On the same day, Petitioner was served with a Form I-200

[1] Petitioner alleges that he was an unaccompanied minor. Am. Pet. ¶ 16. The parties agree that Petitioner was 19 at the time. *Id.* Dkt. No. 9-1 at 1. He therefore does not satisfy the definition of "unaccompanied alien child" because it is limited to children who have "not attained 18 years of age." 8 U.S.C. § 1232(g) (incorporating the definition of "unaccompanied alien child" from 6 U.S.C. § 279(g)(2)(B)).

administrative arrest warrant, and he has been detained since then. *Id.* At the time of his arrest, Petitioner did not have a criminal history. Dkt. No. 9-5 at 3.

## II. JURISDICTION

"28 U.S.C. § 2241(c)(3) authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)). In addition, "'[f]ederal courts have jurisdiction to hear habeas corpus claims by non-citizens challenging the constitutionality of their detention.'" *Gaspar v. Akshar,* No. 9:26-cv-118 (BKS), 2026 WL 699369, at * 2 (N.D.N.Y. Feb. 17, 2026) (quoting *Lopez v. Sessions,* No. 18-cv-4189, 2018 WL 2932726, at *6 (S.D.N.Y. June 12, 2018) (citing *Demore v. Kim,* 538 U.S. 510, 516-17 (2003)). "Federal courts retain jurisdiction under § 2241 to review purely legal statutory and constitutional claims regarding the government's detention authority, but jurisdiction does not extend to 'discretionary judgment,' 'action,' or 'decision' by the Attorney General with respect to either detention or removal." *Mahmodi v. Marich*, No. 25-cv-6762, 2026 WL 113473, at *2 (W.D.N.Y. Jan. 15, 2026) (citing *Jennings v. Rodriguez*, 583 U.S. 281, 295 (2018) (other citations omitted)).

## III. DISCUSSION

### A. Statutory Basis for Detention

Although Respondents acknowledge that "courts within this Circuit are likely to conclude that 1226(a) governs re-detention after the noncitizen has been released into the United States" under *Barbosa da Cunha v. Freden,* 175 F.4th 61 (2d Cir. 2026), Respondents state that "DHS maintains that a noncitizen apprehended shortly after entry and initially processed under 1225(b) may subsequently be re-detained under that provision notwithstanding an intervening" order

releasing a noncitizen on recognizance. Resp. at 2.

This Court previously rejected that argument. *See Morales Mendez v. Field Director,* 9:26-cv-337 (ECC), 2026 WL 734347, at *2 (N.D.N.Y. Mar. 16, 2026) (concluding that "petitioner, who was released into the United States on her own recognizance approximately 18 months before her February 2026 arrest, was not seeking admission when she was arrested and that, for the persuasive reasons articulated by other district courts, § 1226(a), not § 1225(b)(2)(A) applies") (citations omitted). That conclusion was supported by the Second Circuit's later holding that a noncitizen who was detained more than 20 years after entering without inspection and admission was not "seeking admission" when he was arrested and that "Section 1226(a) plainly applies to noncitizens . . . who are present in the United States, but charged as inadmissible for entering the country without inspection and admission." *da Cunha,* 175 F. 4th at 73. As a result, the Court concludes that § 1226(a) applies to Petitioner.

**B. Required Due Process**

The next question is whether Petitioner's detention violates due process. Under these circumstances, courts apply the three-factor balancing test articulated in *Mathews v. Eldridge,* 424 U.S. 319, 348 (1976) weighing "(1) 'the private interest that will be affected by the official action'; (2) 'the risk of an erroneous deprivation of such interest through the procedures used, and the probative value, if any, of additional or substitute procedural safeguards'; and (3) 'the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.'" *Gaspar,* 2026 WL 699369, at *8 (quoting *Velasco Lopez v. Decker*, 978 F.3d 842, 850 (2d Cir. 2020)) (in turn quoting *Mathews,* 424 U.S. at 335).

**1. The Private Interest at Stake**

"[T]he Second Circuit has explained that the private interest at stake here 'is the most significant liberty interest there is—the interest in being free from imprisonment.'" *O.F.C. v. Almodovar,* No. 25-cv-9816, 2026 WL 74262, at *9 (S.D.N.Y. Jan. 9, 2026) (quoting *Velasco Lopez*, 978 F.3d at 851); *see also Foucha v. Louisiana*, 504 U.S. 71, 80 (1992) ("We have always been careful not to minimize the importance and fundamental nature of the individual's right to liberty.") (internal quotation marks omitted). "Courts have held that the first *Mathews* factor cuts in favor of petitioners who were released from ICE detention subject to conditions and the threat of re-detention." *Khabazha v. United States Immigr. & Customs Enf't*, No. 25-cv-5279, 2025 WL 3281514, at *5 (S.D.N.Y. Nov. 25, 2025) (collecting cases).

In addition, although the Batavia Federal Detention Facility is "'perhaps not akin to a maximum-security prison,'" it "is not 'meaningfully different from at least a low-security penal institution for criminal detention.'" *Persaud v. Ball,* No. 1:26-cv-841, 2026 WL 2069859, at *3 (W.D.N.Y. Jul. 17, 2026) (quoting *Wilson v. Barr,* No. 1:19-cv-1364, 2020 WL 13554798, at *7 (W.D.N.Y. May 1, 2020)). "And Petitioner's liberty interest is even more heightened because the deprivation of his liberty does not stem from a criminal adjudication." *Persaud,* 2026 WL 2069859, at *3 (citing *Alvarez Ortiz v. Freden,* 808 F. Supp. 3d 579, 599 (W.D.N.Y. 2025)).

Here, the Court finds that this factor weighs strongly in favor of Petitioner.

**2. Risk of Erroneous Deprivation**

Regarding the second factor, "[a] person's liberty cannot be abridged without 'adequate procedural protections.'" *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 492–93 (S.D.N.Y. 2025) (quoting *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001)). In addition, although the Immigration and Naturalization Act undoubtedly vests broad authority to arrest and detain noncitizens, "due process must account for the wide discretion that § 1226(a) vests in the Government to arrest *any* person

in the United States suspected of being removable." *Reyes v. King*, No. 19 Civ. 8674, 2021 WL 3727614, at *6 (S.D.N.Y. Aug. 20, 2021) (emphasis in original). "And before the Government may exercise such discretion to detain a person, '§ 1226(a) and its implementing regulations require ICE officials to make an individualized custody determination.'" *Lopez Benitez,* 795 F. Supp. 3d at 492-93 (quoting *Velesaca v. Decker*, 458 F. Supp. 3d 224, 241 (S.D.N.Y. 2020), *appeal withdrawn sub nom. Velesaca v. Wolf*, No. 20 Civ. 2153, 2020 WL 7973940 (2d Cir. Oct. 13, 2020)); *see also O.F.C,* 2026 WL 74262, at *7 ("To be sure, although Section 1226(b) does not itself require a pre-deprivation hearing, it does still require some process—namely, that there be an individualized determination regarding the noncitizen's dangerousness or risk of flight."). "That conclusion follows from the text of § 1226(a), which provides that the Attorney General 'may continue to detain' an arrested noncitizen, as the Supreme Court has interpreted similar 'may' language in other provisions of the INA to require the Attorney General to make 'some level of individualized determination.'" *Lopez Benitez,* 795 F. Supp. 3d at 492 (cleaned up).

Respondents do not argue that they made any individualized determination before arresting Petitioner. In fact, they do not mention "individualized determination" in their response. Furthermore, they have not identified any changed circumstances since Petitioner's 2024 release into the country and his recent arrest. *See Sidqui v. Almodovar*, 823 F. Supp. 3d 364, 392 (S.D.N.Y. 2026) ("The risk of erroneous deprivation of a noncitizen's liberty interest is 'high' where the Government cannot 'articulate[ ] any change in circumstances between the time of the [noncitizen's] initial release and his re-detention that now makes him a flight risk.'") (citation omitted). Respondents also do not mention due process in their response except to argue that "this case does not present the prolonged detention that supported the heightened procedural protections imposed in *Velasco Lopez*" and stating that "a prompt bond hearing would address any procedural

deficiency." Dkt. No. 9 at 3, 4. Finally, Respondents do not argue that Petitioner is dangerous or a risk of flight, and the record indicates that he did not have any prior arrests or criminal history when he entered the country or when he was recently arrested. Dkt. Nos. 9-1 at 2; 9-5 at 3.

This factor therefore weighs in Petitioner's favor. *See Khabazha v. United States Immigr. and Customs Enf't*, No. 25-cv-5279, 2025 WL 3281514, at *6 (S.D.N.Y. Nov. 25, 2025) ("When the government seeks to curtail a person's liberty, [t]he law requires a change in relevant facts, not just a change in attitude. The decision must also be reasonably explained.") (internal citations and quotation marks omitted).

**3. The Government's Interest**

As to the final factor, the Government's "interests in detaining noncitizens under § 1226(a) [are] (1) ensuring that noncitizen[s] do not abscond and (2) ensuring they do not commit crimes." *Velasco Lopez*, 978 F.3d at 854; *see also Valdez v. Joyce*, 803 F.Supp.3d 213, 218 (S.D.N.Y. 2025) ("The Government has interests in 'ensuring the appearance of aliens at future immigration proceedings' and 'preventing danger to the community.'") (quoting *Zadvydas*, 533 U.S. at 690). "However, the Government has little interest in detaining a noncitizen who was previously determined to be neither a flight risk nor dangerous, . . .without an individualized determination of risk of flight and dangerousness." *Sidqui*, 823 F. Supp. 3d at 394; *see also Sterling v. Bondi*, No. 3:25-cv-2122, 2026 WL 1746537, at *8 (D. Conn. Jun. 17, 2026) ("Put differently, insofar as noncitizens released on bond have been determined to be neither a flight risk nor dangerous, the Government's interest in re-detaining them is minimal, absent demonstrable changed circumstances and an individualized reassessment as to the noncitizens' flight risk and dangerousness.").

Given the circumstances here, where ICE released Petitioner on his own recognizance after

concluding that he did "not appear to be a threat to national security, border security, or public safety," the absence of "demonstrable changed circumstances," and the absence of "an individualized reassessment as to [his] flight risk and dangerousness," the Government's interest in re-detaining Petitioner is "minimal." *Sterling,* 2026 WL 1746537, at *8. The Court therefore finds that Petitioner's detention violates his rights under the Due Process Clause of the Fifth Amendment.

**C. Remedy**

Respondents argue that "the appropriate remedy is a prompt, individualized bond hearing before an Immigration Judge, rather than immediate release." Dkt. No. 9 at 3.

Under the circumstances here, where ICE previously released Petitioner on an order of recognizance after concluding that he did "not appear to be a threat to national security, border security, or public safety," there is nothing in the record suggesting any changed circumstances indicating dangerousness or risk of flight, and the response to the amended petition does not even mention "individualized assessment" let alone articulate that one occurred here, the appropriate remedy is release.[2] *See Gaspar,* 2026 WL 699369, at *9 (collecting cases); *Cardenas v. Almodovar,* 25-cv-9169, 2025 WL 3215573, at *3 (S.D.N.Y. Nov. 18, 2025) (citing *Lopez Benitez*, 795 F. Supp. 3d at 498-99 (reaching that result by applying the *Mathews* test); *Tumba Huamani v. Francis,* 813 F.Supp.3d 394, 407 (S.D.N.Y. 2025) (reaching that result, but concluding that the *Mathews* test does not apply)); *see also Rodriguez-Acurio v. Almodovar*, 811 F.Supp.3d 274, 319-20 (E.D.N.Y. 2025) (concluding that where ICE detained the Petitioner "under the wrong statute and without any notice or opportunity to be heard, much less the procedures required under Section

[2] Given this conclusion, it is not necessary to address Petitioner's arguments related to the Administrative Procedures Act, the Fourth Amendment to the United States Constitution, or the Trafficking Victims Protection Reauthorization Act.

1226(a)," then "a post-deprivation bond hearing before a DHS officer or even an immigration judge would provide no genuine opportunity for relief because the detention without adequate pre-deprivation procedures has already been carried out.")

## IV. CONCLUSION

For these reasons, it is

**ORDERED** that the Amended Petition is **GRANTED**, and it is further

**ORDERED** that Petitioner's request for habeas relief pursuant to 28 U.S.C. § 2241 is **GRANTED**, and it is further

**ORDERED** that Petitioner be immediately released from immigration custody by September 11, 2026 at 5 p.m., and it is further

**ORDERED** that Respondents file a status update confirming Petitioner's release by September 11, 2026 at 5 p.m., and it is further

**ORDERED** that Petitioners' request to award counsel fees and costs under the Equal Access to Justice Act (EAJA) is **DENIED without prejudice** as premature. Counsel for Petitioners may apply for EAJA fees within 30 days after the 60-day appeal period has expired, *see Barbour v. Colvin,* No. 12-cv-00548, 2013 WL 7206218, at *1 (E.D.N.Y. Aug. 1, 2013).

**IT IS SO ORDERED.**

Dated: September 10, 2026

Elizabeth C. Coombe
U.S. District Judge